IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:21-CR-00172-01 |
| v. | (Chief Judge Brann) |
| NAIM TAYLOR, | |
| Defendant. | |

MEMORANDUM OPINION

JULY 28, 2025

I.   BACKGROUND

In 2022, the Government filed a third superseding indictment charging Naim Taylor with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count 1), and eight counts of distribution and possession with the intent to distribute controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts 11, 12, 13, 15, 19, 20, 21, 22).[1] Taylor thereafter pled guilty, pursuant to a written plea agreement, to Count 19 alleging possession with the intent to distribute forty grams or more of fentanyl.[2]

The plea agreement noted that the offense carried a mandatory minimum term of five years' imprisonment, and a maximum term of forty years' imprisonment.[3] It further provided that the parties agreed that Taylor was responsible for a specific quantity of narcotics, that a decrease in his offense level was appropriate based on his acceptance

---

[1]   Doc. 393.
[2]   Docs. 515, 533.
[3]   Doc. 515 at 1-3.

of responsibility, and that two increases to his offense level were appropriate including, as relevant here, a two-level increase for possession of a firearm.[4]

It further stated that Taylor had discussed the case and plea agreement with his attorney ("Counsel"), and Counsel had advised Taylor of several things, including the evidence against Taylor, possible defenses, and consequences of pleading guilty.[5] Moreover, the plea agreement noted that Taylor was "satisfied with the legal services and advice provided to the defendant by the defendant's attorney."[6]

Finally, the plea agreement contained a waiver of Taylor's collateral appeal rights, wherein he agreed:

> The defendant acknowledges, understand and agrees that, by pleading guilty pursuant to this Agreement, the defendant voluntarily and knowingly waives the right to collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, including but not limited to a motion to vacate judgment under Title 28, United States Code, Section 2255 . . . [but not his right to file a] motion claiming that the defendant received constitutionally ineffective assistance of counsel.[7]

At the change of plea hearing, Taylor again acknowledged that he was satisfied with the representation that he had received from Counsel.[8] This Court reiterated that the maximum sentence that could be imposed was forty years' imprisonment, and that the offense carried a mandatory minimum term of five years' imprisonment.[9] Counsel

---

[4] *Id.* at 9-10.
[5] *Id.* at 23.
[6] *Id.*
[7] *Id.* at 19.
[8] Doc. 745 at 5.
[9] *Id.* at 9.

and the Government both estimated that Taylor's offense level would be 26 and his criminal history category would be III—although Counsel hoped that it may be lower—resulting in an advisory Sentencing Guidelines range of 78 to 97 months' imprisonment.[10]

Taylor understood, however, that if the actual Sentencing Guidelines range were different than any estimate provided, he would not be able to withdraw his guilty plea, and he understood that no one could guarantee what sentence he would receive from the Court.[11] Moreover, Taylor understood that prior criminal convictions "may increase [his] guideline range."[12] The Court notified Taylor that the Sentencing Guidelines range was "advisory only" and that the "Court has the authority to impose a sentence that is more severe or less severe than the sentence prescribes by the guidelines."[13] Finally, Taylor confirmed that he understood he was waiving both his right to a direct appeal and to file a collateral appeal.[14]

The Court ultimately accepted the guilty plea, and a Presentence Report (PSR) was prepared.[15] The PSR discussed that Taylor helped to lead a large drug trafficking network that involved members of a Philadelphia based street gang.[16] This network involved numerous other individuals, some of whom possessed firearms.[17] The PSR

---

[10]   *Id.* at 10-12.
[11]   *Id.* at 12, 14.
[12]   *Id.* at 12.
[13]   *Id.* at 13.
[14]   *Id.* at 14.
[15]   Docs. 533, 639.
[16]   Doc. 639 at 12.
[17]   *Id.* at 12-21.

further noted that, in intercepted phone calls, Taylor discussed exchanging firearms with another individual, and stated in a later phone call that another individual held three of Taylor's firearms.[18] On a different phone call, Taylor discussed needing to a clean one of his firearms since someone else had handled it.[19]

This history of possessing firearms in connection with his drug trafficking led to a two-level increase in Taylor's offense level, pursuant to *U.S. Sentencing Guidelines Manual* § 2D1.1(b)(1) (2021), which helped contribute to a total offense level of 27.[20] The PSR also detailed Taylor's criminal history—a history that began at the age of 14—which resulted in seven criminal history points and a criminal history category IV.[21] Two of those criminal history points were assigned because Taylor was on parole when he committed the offense, pursuant to USSG § 2D1.1(b)(1).[22] An offense level of 27 and a criminal history category IV resulted in a guidelines calculation of 100 to 125 months' imprisonment.[23]

Counsel objected to the two-level increase for possession of a firearm, arguing that, in light of recent caselaw, that enhancement was unconstitutional.[24] He further objected to the application of four points as the leader of the conspiracy, rather than a

---

[18] *Id.* at 19.
[19] *Id.*
[20] *Id.* at 22-23.
[21] *Id.* at 23-25.
[22] *Id.* at 25.
[23] *Id.* at 30
[24] Doc. 640 at 1; Doc. 650 at 4-5. Counsel also initially objected to the factual conclusion that Taylor had even possessed a firearm, but withdrew that objection to maintain conformity with the plea agreement. Doc. 640 at 1; Doc. 650 at 3.

three-point increase as a manager of the conspiracy.[25] Counsel further argued that a criminal history category IV substantially overrepresented Taylor's criminal history, and a downward departure to criminal history category III was warranted.[26]

At sentencing, Counsel confirmed that he had one lingering objection, reiterating his objection to the two-level increase to Taylor's offense level for possession of a firearm.[27] Specifically, he argued that the enhancement punished Taylor for possessing a firearm, contrary to the Second Amendment to the United States Constitution.[28] This Court overruled that objection, finding that enhancing a Sentencing Guidelines range based upon possession of a firearm while committing a drug trafficking offense is constitutional.[29]

The Court adopted the agreement reached between Counsel, Taylor, and the Government, which provided that Taylor was a manager of the drug trafficking organization, not the leader of it.[30] Taylor's total offense level was therefore reduced to 26.[31] The Court granted Counsel's motion for a downward departure, finding that a reduction of two criminal history points, and a departure to a criminal history category III, was appropriate.[32] Accordingly, with a criminal history category III and an offense level of 26, the Court calculated a Sentencing Guidelines range of 78 to 97 months'

---

[25] Doc. 640 at 2.
[26] Doc. 650 at 6-7.
[27] Doc. 705 at 4-7.
[28] *Id.*
[29] *Id.* at 8-9.
[30] *Id.* at 8.
[31] *Id.* at 10.
[32] *Id.* at 10-15.

imprisonment.[33] This Court ultimately imposed a within-Guidelines sentence of 96 months' imprisonment, primarily based upon the seriousness of the offense, Taylor's dangerous possession of firearms during that offense, and the fact that he was on supervision at the time he committed that crime.[34]

Taylor did not file a direct appeal but, instead, in August 2024 filed a timely 28 U.S.C. § 2255 motion challenging his conviction and sentence.[35] In his short motion, Taylor raises three separate but interrelated claims.[36] First, Taylor asserts that Counsel wrongly advised Taylor that he could not overcome the firearm enhancement, and therefore the best decision was to sign the plea agreement despite the provision within it accepting the factual basis for the enhancement.[37] Second, he contends that Counsel did not object to the firearm enhancement in the way that Taylor preferred—that being that firearms were never seen in his possession during the offense.[38] Finally, Taylor argues that Counsel wrongly advised that the Sentencing Guidelines range would be 70 to 87 months' imprisonment.[39]

The Government has responded to Taylor's § 2255 motion and asserts that it is without merit.[40] The Government first argues that Taylor's motion is barred by the

---

[33] *Id.* at 15.
[34] *Id.* at 25-30. *See also* Doc. 656.
[35] Doc. 733.
[36] *Id.*
[37] *Id.* at 4.
[38] *Id.* at 5.
[39] *Id.* at 7.
[40] Doc. 748.

collateral appeal waiver contained within the plea agreement that he signed.[41] Second, it asserts that Taylor cannot establish that he received ineffective assistance of counsel, as he received tangible benefits from the plea agreement he signed, his attorney performed well in the matter, and Taylor twice affirmed that he was satisfied with the assistance of Counsel.[42]

Taylor has not filed a reply brief and the time to do so has now lapsed, rendering this matter ripe for disposition. For the following reasons, the Court will deny Taylor's motion.

## II.    DISCUSSION[43]

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[44] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[45] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[46] As the United States Supreme Court has emphasized:

---

[41]  *Id.* at 15-16.
[42]  *Id.* at 16-23.
[43]  Taylor's claims appear to sound in effective assistance of counsel. To the extent that his claims go beyond ineffective assistance of counsel, they are barred by the collateral appeal waiver that Taylor knowingly and voluntarily signed, and are denied as such.
[44]  *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[45]  *Id.* (quoting *Strickland*, 466 U.S. at 687).
[46]  *Strickland*, 466 U.S. at 690.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[47]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[48] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[49] "In the context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[50]

### A.    Issues Related to Estimated Sentencing Guidelines Range

Taylor argues that Counsel erroneously advised Taylor that he "should be able to get around the probation 2 pt on criminal history" which would result in a Sentencing Guidelines range of between 70 to 87 months' imprisonment.[51] Regardless of whether

---

[47] *Id.*
[48] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[49] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[50] *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).
[51] Doc. 733 at 7.

Counsel performed deficiently in estimating the range of sentence that Taylor may receive,[52] the Court concludes that Taylor cannot establish any prejudice.

The Third Circuit has long held that "[w]hen addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer," which necessarily includes "the comparative sentence exposure between standing trial and accepting a plea offer."[53] "However, 'an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where an adequate plea hearing was conducted.'"[54]

The Third Circuit has emphasized:

> all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.[55]

Consequently, where a court's plea colloquy accurately establishes the maximum term of imprisonment that the defendant faces, and advises the defendant that the court has the discretion to impose a sentence outside of the Sentencing Guidelines range and up

---

[52] The Court notes that Taylor would have great difficulty establishing deficient performance. During the change of plea hearing, Counsel estimated that Taylor would be a criminal history category III and would have an offense level 26. Doc. 705 at 11. These were the exact numbers reached by the Court. Doc. 745 at 15. Moreover, while Taylor asserts that Counsel stated they "should" be able to get around two criminal history points, Doc. 733 at 11, this is contradicted by Taylor's statement during the change of plea hearing that no one had made promises to him beyond the written plea agreement, and his acknowledgment that he understood no one could guarantee what sentence he would receive. Doc. 705 at 14, 18.
[53] *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).
[54] *Id.* (quoting *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007) (brackets omitted)).
[55] *Shedrick*, 493 F.3d at 299.

to the statutory maximum term of imprisonment, a defendant suffers no prejudice from an erroneous sentencing prediction by his attorney.[56]

Here, both the plea agreement and the Court's plea colloquy informed Taylor of these critical facts. Taylor was informed that the charged offense carried a potential sentence of up to forty years' imprisonment.[57] He was also informed that the Court was not bound by the Sentencing Guidelines range but was instead "free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 40 years"[58] and had "the authority to impose a sentence that is more severe or less severe than the sentence prescribed by the guidelines."[59] Because the plea agreement and the plea colloquy that the Court conducted with Taylor cured any potential prejudice from Counsel's purportedly erroneous sentencing estimate, this claim of ineffective assistance of counsel fails.

### B.     Issues Related to Firearm Enhancement

Taylor also asserts that Counsel was ineffective with respect to the firearm enhancement applied in his case.[60] Taylor contends that Counsel wrongfully advised that Taylor could not avoid such an enhancement and language that the enhancement applies therefore should stay in the plea agreement, and did not lodge a factual objection to that enhancement, despite Taylor wishing for such an argument.[61]

---

[56]  *Id.* at 299-300.
[57]  Doc. 515 at 1; Doc. 745 at 9.
[58]  Doc. 515 at 13-14; *see* Doc. 745 at 12-14, 18.
[59]  Doc. 745 at 13.
[60]  Doc. 733 at 4-5.
[61]  *Id.*

Taylor's claims fail. First, Counsel did not perform deficiently in advising Taylor that it was unlikely he could overcome the firearm enhancement. The facts contained within the Presentence Report, to which Taylor had no objections, demonstrate that during intercepted calls Taylor discussed possessing, trading, and otherwise obtaining firearms.[62] These facts establish that he possessed firearms in connection with the offense, and any objection would have been meritless. And even if this advice had been erroneous, Taylor has not demonstrated—let alone alleged—that there is a reasonable probability that he would have refused to plead guilty and instead proceeded to trial absent this advice, and he therefore suffered no prejudice.[63]

With regard to Taylor's issue with Counsel not objecting to the firearms enhancement in the manner Taylor preferred, this claim also fails. First, as detailed above, any such objection would have been meritless, and it is well established that Counsel "cannot be deemed ineffective for failing to raise a meritless claim."[64] Second, Counsel did initially lodge a factual objection to the firearm enhancement[65] but wisely withdrew that objection and modified it to purely a legal objection to conform with the terms of the plea agreement.[66] The decision to abandon a fact-based objection was undoubtedly a strategic decision, since pursuing that objection would have violated and

---

[62] Doc. 639 at 19. *See* Doc. 640 at 1 (objection noting that Taylor had not been observed with a firearm, but not contesting the summary of the recorded phone calls).
[63] *Fazio*, 795 F.3d at 426.
[64] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018) (internal quotation marks omitted).
[65] Doc. 640 at 1.
[66] Doc. 650 at 3.

11

potentially nullified the plea agreement. As the Supreme Court of the United States has held, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[67] Simply put, Counsel's performance in preserving the plea agreement and refusing to lodge a doomed factual objection was not deficient.

Taylor therefore can establish neither deficient performance nor prejudice with respect to Counsel's treatment of the firearm enhancement. These claims will therefore also be denied.

### C.  Certificate of Appealability

Because the Court will deny Taylor's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[68] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[69] To satisfy this standard Taylor must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[70] The Court finds that Taylor has not met this burden, and therefore declines to issue a certificate of appealability.

---

[67] *Strickland*, 466 U.S. at 690.
[68] 28 U.S.C. § 2253(c)(1)(B).
[69] *Id.* § 2253(c)(2).
[70] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Taylor did not receive ineffective assistance of counsel, and his 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
